Bloom & Co. v. Lewis.

---

J. F. BLOOM & COMPANY, APPELLANT, v. MYRTLE LEWIS, APPELLEE.

FILED JULY 1, 1925. No. 23183.

Evidence examined, and *held* insufficient to sustain the verdict.

APPEAL from the district court for Otoe county: JAMES T. BEGLEY, JUDGE. *Reversed.*

*W. W. Wilson* and *Johnson, Moorhead & Rine,* for appellant.

*D. W. Livingston, contra.*

Heard before MORRISSEY, C. J., GOOD and THOMPSON, JJ., REDICK and SHEPHERD, District Judges.

REDICK, District Judge.

The petition declares upon a written contract dated November 16, 1920, for the sale by plaintiff to defendant of a monument to be placed over the grave of her husband. The material was to be Balfour pink granite of a design and lettering specified in the contract, and included an engraved marker and initialed corner stones. The price was $650 set in place. The answer admitted the making of the contract, and in addition to a quite dramatic description of the forlorn and helpless situation of the widow, and the wicked intentions of plaintiff's salesman, presumably inserted as matter of inducement, alleged that her signature to said contract had been obtained by false representations: (a) "That the plaintiff company would furnish such monument to her at two-thirds, or less than two-thirds, of the price charged by the local dealer or by any other persons engaged in selling and erecting monuments;" and (b) "that the said plaintiff company was then about to make a large shipment of monuments to Nebraska City, and the one that he proposed to sell defendant would be included." And it is then alleged that immediately upon discovery that said representations were false she caused the administrator of said estate to rescind said contract. The reply was a general denial. Trial to a jury, verdict for the defendant, motion for new trial overruled, judgment on the verdict, from which plaintiff appeals.

Errors relied upon for reversal are: (1) That the verdict is not sustained by sufficient evidence; (2) error in giving and refusing certain instructions; (3) the reception of incompetent evidence over plaintiff's objections; and (4) error in permitting leading questions to be put to defendant as to false representations.

The first assignment requires a somewhat detailed examination of the evidence. The defendant was the only witness called to prove the alleged representations, although two other persons, her mother-in-law and sister-in-law,

were present at the time, and were within the jurisdiction
of the process of the court at the time of the trial.

After stating that one Perry, sales agent of plaintiff,
about a month after her husband's death, came to her house,
she testified as follows:

"Q. Did he tell you what he came to your place for? Just
answer by yes or no. A. Yes, sir. Q. What was it he said
his business there was? Just tell the jury in words or
substance what he stated at that time. A. He was wanting
to sell me a monument and he showed photos of a monu-
ment. We looked at the photos and I decided on the one
that I wanted. Q. What did he say to you, if anything,
about what this monument was worth? Mr. Wilson: Ob-
jected to as leading and suggestive. The Court: Overruled.
A. That it was worth its price. Q. Do you remember what
that price was? A. $650. Q. Now, what, if anything, did
he say about whether or not it could be purchased, whether
he was offering it to you, for less than you could get it here?
Mr. Wilson: Objected to as incompetent, irrelevant, imma-
terial, leading, and suggestive. The Court: Sustained. Q.
What, if anything, did he say about the price as compared
with others? Mr. Wilson: Objected to as incompetent, ir-
relevant, immaterial, leading, and suggestive. The Court:
Overruled. A. One-third less. Q. Did he explain to you
how he could make that kind of a price to you? Mr. Wilson:
Objected to as incompetent, irrelevant, immaterial, leading,
and suggestive. The Court: Overruled. A. That he was
having a large shipment and for that reason he could sell
it cheaper. Q. Had you had any experience in buying monu-
ments at that time? A. No, sir. Q. Did you have any
knowledge of the value of monuments at that time? A. No,
sir. Q. Did you rely on what he said as to the value of
this monument? A. Yes, sir. Q. Did you depend upon or
believe what he said as to its value? A. Yes, sir."

The defendant then, in answer to leading questions,
stated that about two or three weeks later she received in-
formation (not stated) leading her to believe that the rep-
resentation as to the value of the monument was untrue,

and that she instructed the administrator of the estate to rescind the contract. The above constitutes the entire testimony as to the alleged fraud.

The salesman, Perry, denied that he represented the monument would be furnished at two-thirds or less of the price of a local dealer, but admitted that he told her of a few people he had sold monuments to, and that they would be shipped down in the spring and hers would come with the rest of them.

November 19, 1920, defendant, in response to a letter from plaintiff, confirmed the contract, subject to some alterations as to the form of the letters. About December 15, 1920, plaintiff received the following letter:

"J. F. Bloom & Company, Omaha, Nebr.

"Gentlemen: Mrs. Myrtle Lewis showed me what purports to be a contract for a monument to be furnished by your firm for the estate of the late Lewis Lewis, I say to you that I was appointed admstrtr. of this estate, and any contract would have to have my name signed to it to bind the estate, which I refuse to do, I therefore notify you not to proceed with this work, *you must not trespass on the Lewis lot in Wyuka Cem,* the fact is the estate is not in condition to contract for a monument, you will have to cancel this contract, this is final and I don't want you or your agent bother either Mrs. Lewis or myself about this matter any further. Yours truly,

"(Signed) Wm. Wardon, Administrator."

This is the letter which defendant says she instructed the administrator to write. It will be noted that not the slightest suggestion of fraud or misrepresentation is contained in the letter. The emphasis is put upon the assumption that the contract would have to be made with the administrator, and that the estate was not in condition to contract. This letter was written out in pencil by Wardon, and typewritten, at his request, by W. A. Forbes, a monument dealer of Nebraska City, in his office. Forbes subsequently sold defendant a monument for $500. It may be remarked in passing that the contract in suit does not purport to bind the estate, but is a personal one with the de-

fendant. After receiving above letter plaintiff sent Perry to Nebraska City to see defendant, and he testifies: "I went there, went to her home here where she was staying and asked her about it, and she told me that she, that Mr. Wardon didn't want her to take the monument. She said she didn't know why, and I told her that we could not rescind the contract and that we would have to go ahead with it, and she told me to go ahead with it." This is not denied by the defendant. However, in March or April, 1921, the monument being ready for delivery, Perry called upon defendant for her authority to the cemetery association to place the monument upon her lot, but she refused to take it, saying, according to the witness: "That she had made arrangements with Mr. Forbes, and that he said, if she had any damages to pay on this one, he would pay them." At neither of these conversations was there the slightest intimation from defendant that she claimed to have been defrauded. Defendant denied that she made any statement to Perry as to Forbes, but admitted that she stated over the telephone to Mr. Wilson, plaintiff's attorney, that Forbes was backing her, and later, upon the suggestion of her counsel that she did not understand the question, denied that she had so stated.

No question is made but that plaintiff prepared the monument in accordance with the contract and had it in Omaha ready for delivery.

We think the trial judge should not have permitted the leading questions as to the representations, at least until after the witness had stated all the conversation she could remember, when it is allowable to call attention to some particular matter. But passing this, and not ignoring the well-established rule of this court that disputed questions of fact are for the jury, it requires more than a scintilla of evidence to support a verdict, and we are in serious doubt whether even that amount of evidence is here present. Considered in connection with the matters now to be discussed, we think the evidence is absolutely insufficient to support the verdict.

The false representations relied upon are that the monument was of the value stated in the contract, and that it was a third or more less than the same monument could be furnished by local dealers. As to the first point, defendant introduced but one witness, Forbes, who subsequently, with full knowledge of plaintiff's contract, sold defendant a monument to take the place of the one plaintiff was to furnish and who defendant once admitted was backing her in this law-suit. He testified that the monument in question (stone marker and corners) was worth not to exceed $425 to $450, the same price as any standard granite. His testimony was objected to as incompetent, and no proper foundation laid. The objection should have been sustained. While the trial judge has considerable latitude of discretion in determining the competency of expert witnesses to give their opinions, it appeared from the witness' testimony that he had never handled any granite of the kind specified in the contract, and that all he knew of the cost of the stone was from conversation with unnamed and unidentified salesmen some three years previously in which they stated that the granite in question, which comes from North Carolina, would cost at the quarries some 10 or 15 per cent. more than Vermont or Massachusetts granite. He testified that stone like that furnished by plaintiff, of Barre granite from Vermont, would cost $100, and this was what he sold defendant. It appears, however, without dispute, that the stone furnished by plaintiff cost at the quarry $280. The witness' estimate was based upon $100 as the cost of the stone, and allowing for the correction in accordance with the facts would bring his estimate substantially up to the price charged by plaintiff. The evidence establishes that the pink granite is a special kind, much harder than the gray, and much more difficult to polish, testimony for plaintiff being that the cost of preparing the stone was 50 per cent. greater than ordinary granite. It is shown by the evidence that the cost to plaintiff of the stone in question set in place would be about $401, therefore yielding him a profit under his contract of about 38 per cent.; while, ac-

cording to Forbes, the stone he sold cost him $100, and, the evidence showing the expense of lettering and setting to be $100, it appears that the cost to him of the monument in place sold defendant was about $200, yielding a profit of 60 per cent. It would seem, therefore, that he could well afford to "back" the defendant in this litigation. Plaintiff produced five witnesses, three of them disinterested, who testified that the fair value of plaintiff's monument was the price fixed by the contract. There was no competent evidence that the monument was not worth the price, and there was no evidence, competent or otherwise, that the price was more than two-thirds what a similar monument could be furnished for by a local dealer, nor that plaintiff had not sold other monuments which would be shipped at the same time.

Inasmuch as the evidence is insufficient to support the verdict as to the existence of the alleged representations or as to their falsity, if made, judgment must be reversed.

REVERSED AND REMANDED.